Resurgence Asset Mgt., LLC v Gidumal (2019 NY Slip Op 07493)





Resurgence Asset Mgt., LLC v Gidumal


2019 NY Slip Op 07493


Decided on October 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 17, 2019

Friedman, J.P., Renwick, Kapnick, Gesmer, Kern, JJ.


10109 651737/12

[*1] Resurgence Asset Management, LLC, Plaintiff-Respondent, Resurgence GP III, LLC, et al., Plaintiffs,
v
Steve Gidumal, Defendant-Appellant.


O'Brien LLP, New York (Sean R. O'Brien of counsel), for appellant.
Pollack Solomon Duffy LLP, New York (Barry S. Pollack of counsel), for respondent.



Order, Supreme Court, New York County (James E. d'Auguste, J.), entered November 7, 2018, which, to the extent appealed from as limited by the briefs, inter alia, granted plaintiff Resurgence Asset Management, LLC's (RAM) cross motion for partial summary judgment on liability on the claim for breach of contract, unanimously affirmed, without costs.
Defendant, Steve Gidumal, served as a Managing Director and Co-Chief Investment Officer for RAM, a private equity firm founded and owned by plaintiff M.D. Sass Investors Services, Inc. During his tenure, Gidumal managed, inter alia, an investment fund titled M.D. Sass Corporate Resurgence Holdings III, LLC (Holdings), a wholly-owned subsidiary of a fund known as "Fund III" consisting of 13 investors. The Limited Partnership Agreement that created Holdings contained a "clawback provision" that allowed the Limited Partners to receive any overpayments in incentive fees from the General Partner, Resurgence GP III LLC, in the event that they lost money.
On September 28, 2008, Gidumal entered into a Termination Agreement, effective July 31, 2008, with RAM and its affiliates (the Companies) due to differences in the parties' investment strategies. The Termination Agreement provided that the Companies would continue to pay Gidumal 20.588% of profits from August 1, 2008 through July 31, 2009, and 10.294% for the following year.
The Termination Agreement specifically stated that defendant's compensation payment was subject to clawback obligations. By letter dated January 31, 2011, the Companies informed Gidumal that the preliminary estimate of his pro rata share of his clawback obligations for Fund III would be $428,072. The breach of contract claim is premised upon Gidumal's failure to pay his share of the clawback obligation.
Plaintiffs established prima facie entitlement to summary judgment. Plaintiffs submitted evidence sufficient to show that Gidumal's compensation payment under the terms of the Termination Agreement was subject to a clawback, that plaintiffs performed their obligation under the contract by paying Gidumal the agreed upon compensation and that Gidumal breached the contract by failing to pay his clawback obligation. The terms of the Termination Agreement unambiguously state that Gidumal's pro rata share of any clawback obligation was determined by dividing the profits he received from the fund, through incentive fees or other allocations, by the aggregate profits received by all persons who were subject to the clawback obligation for that fund. This formula does not base the pro rata share of clawback obligations on the investor, and Gidumal's understanding to the contrary cannot alter these clear terms or create a material question of fact (see Wells v Shearson Lehman/American Express, 72 NY2d 11, 24 [1988]).
Moreover, RAM's breach of a representation in the Termination Agreement, that it would not pay Gidumal's Co-Chief Investment Officer, Byron Haney, an amount greater than the [*2]$838,662 compensation payment it made to Gidumal does not preclude summary judgment or discharge Gidumal's duty to perform. RAM, in effect, paid Gidumal a total of $1.07 million under the terms of the Termination Agreement, but split the total payment into two payments. This amount is commensurate with what Haney was ultimately paid.
Gidumal's counterclaim for breach of contract against RAM does not preclude or undermine RAM's claim for breach of contract, as the counterclaim was not "inextricably interwoven with and inseparable from the issues raised in [RAM's] complaint" (cf Marion Scott Real Estate v Riverbay Corporation, 173 AD3d 588 (1st Dept 2019); Boston Concessions Group v Criterion Ctr. Corp., 200 AD2d 543, 544 [1st Dept 1994]).
We have considered Gidumal's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 17, 2019
CLERK